Yazoo & Miss. Valley Railroad Co. *v.* C. M. Brown.

[54 South. 804.]

1. Natural Water Courses. *Change of stream. Damages.*
   Where a stream has left its accustomed channel, and formed a new channel on the land of an adjoining riparian owner, the latter has the right, by the erection of barriers, to turn the waters of such stream from the new to the old channel.

2. Same.
   In such case the riparian owner, on whose land the new channel is formed is not required to first clean out such old channel so as to restore it to the depth and condition it was in before the stream changed its course.

3. Same.
   By condemnation of, or deed to its right of way, a railroad acquired the right to make necessary excavations to build its roadbed and if in properly constructing such roadbed, it results in a creek leaving its old channel, still the railroad had the right to turn it from its new back to its old channel.

Appeal from the circuit court of Wilkinson county.
Hon. H. M. Wilkinson, Judge.

Suit by C. M. Brown against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Longstreet,* for appellant.

The one and only issue involved is, we repeat, was appellee guilty of actionable negligence in forcing the

stream back into its original channel without removing
the accumulated sand and gravel which had partially
filled it?

Now it is an established and elementary principle of
law that a riparian proprietor has the right by erecting
barriers where a new channel has been formed, on his
land, to return the waters from the new channel to the
old one, and he is not responsible for any damage done
to his neighbor so long as his operations tend to confine
the waters within their original channel.   American and
English Ency. Law, vol. 30, 364; Gould on Waters, § 204,
3rd Ed.; Jones on Easements, 735; Angel on Water
Courses, §§ 333, 334; Washburn on Easements, chap 3.,
§ 3, par. 47; see also *Tuthill* v. *Scott,* 5 Am. Dec. 301.

We quote from the opinion in the latter case:

"*Aqua currit et debet currere ut currere solebat.* An-
gel, sec. 93.  According to old maxim the water of this
stream ought to have run in the old channel and no one
could justly complain that any one who had a right to
have it run there made it run there.

"Plaintiff appears to have made the waters of the
stream to run in the old channel to relieve his land of
inundation.  This it seems he had a right to do, and when
done the stream was as rightful in the old channel as
if it had not left it."

See, also, *Slater* v. *Fox,* 5 Hun 544, 101 Fed. Rep. 678,
and particularly, *Pierce* v. *Kenney,* 59 Barb. 56, the last
of which is the leading case on this subject.

So far as we have been able to find, the principles laid
down in the opinion in this case have never been ques-
tioned.

As will be seen, it disposes of the very question which
we are considering in this particular case.

This case held, quoting from the syllabus, that "Where
a stream running across defendant's land and thence up-
on the plaintiff's land, during a flood broke through its
bank making an opening sufficient to carry all the water

ordinarily running, and through this new channel the
water would have continued to run, if not prevented;
held that the defendant had a right for his own protec-
tion to erect a barrier or levee across the crevasse or new
channel for the purpose of confining the water within
the original channel, provided he did not build such bar-
rier too high nor project it into the stream so as to pre-
vent the water running in its accustomed channel, and
with its usual force. Held also that defendant was not
bound to keep the original channel of the creek open upon
his own lands as a condition to his right to maintain such
barrier, and that he was not liable to the plaintiff for
any damage that might ensue from failure to do so."

*J. M. Foreman* and *Shannon and Jones,* for appellee.

Even, if for the sake of the argument, we were to ad-
mit that defendant could build any sort of dam for his
protection, he could not still have built the dam in ques-
tion because the dam actually built did not protect. Plain-
tiff nowhere insisted on their moving any sand or gravel,
and if defendant had moved the sand and gravel, the
height of the dam would still have caused the ruin of
plaintiff's land in spite of the old channel being open.

That portion of the authorities quoted in defendant's
brief certainly do not favor his case. If *"aqua curret
et debet currere ut currere solebat,"* then this water
should have run down the new channel as it had done at
such a stage for over twenty-five years. In *Pierce* v.
*Kenny,* the maxim applies to the old channel exclusively.
The crevasse had just been made by the operation of the
water unaided by the party stopping the crevasse and
was at once checked by the stopping said crevasse
promptly, and not by building a dam more than half way
to the conflux of the old and new channel more than
twenty-five years later. The two and one-half extra
feet on the dam would have in any event overflowed plain-
tiff's land far deeper than it would have overflowed from

either channel. Without it the worst damaged land would not have been submerged.

. Anderson, J., delivered the opinion of the court.

The appellee, Brown, sued the appellant, the Yazoo & Mississippi Valley Railroad Company, for damages claimed to have been sustained by him through the inundation of his land, caused by a dam built by the appellant to divert Foster's creek from its new channel on appellant's right of way to its old channel on the land of appellee. From a judgment in favor of the appellee for five hundred dollars, appellant prosecutes this appeal.

Appellee's land adjoins appellant's railroad right of way. Until some time in the spring of 1908, Foster's creek ran through appellee's land in the same general direction of, and only a short distance from, the railroad, being nearer at some points than at others. Appellant's road was constructed more than twenty years before the alleged injury complained of. In its construction, where it adjoins appellee's land, the railroad track is laid on an embankment, or fill, which was made necessary on account of the land traversed being low. The building of this embankment necessitated excavations from the right of way on either side, leaving depressions. During an overflow in the spring of 1908, the waters of Foster's creek left their old channel on appellee's land, and broke over into the depression so made on the west side of appellant's track, forming a new channel on its right of way, where it has since continued to flow. By the flow of its waters through this new channel, it soon began to cut into and undermine the embankment on which appellant's track is located. For the purpose of diverting the waters of this stream back into the old channel, the appellant, during the year 1908, built dams across it, which were washed away. In 1909, by driving down piling, a dam was finally constructed, which stood

for a while and forced the water into the old channel. The gravamen of appellee's suit is that the appellant had no right to construct this dam, and divert the waters back to the old channel; that, if it had such a right, it could not be exercised, unless the appellant first cleaned out the bed of the old channel, which had, since, the creek changed its course, been filled up to some extent by the deposit of sand and gravel, causing the waters, when turned back, to wash and destroy his land. The appellant assigned as error the refusal of the court below to instruct the jury to return a verdict in its favor.

Where a stream has left its accustomed channel, and formed a new channel on the land of an adjoining riparian owner, the latter has the right, by the erection of barriers, to turn the waters of such stream back from the new to the old channel. The maxim, *"Aqua currit et debet currere, ut currere solebat,"* applies. The waters of a stream ought to run in its old channel, and no one can justly complain that one who has the right to have them so run makes them run there. *Tuthill* v. *Scott,* 43 Vt. 525, 5 Am. Rep. 301; *Pierce* v. *Kinney,* 59 Barb. (N. Y.) 56; Gould on Waters (3d Ed.), § 204. And the riparian owner, on whose land the new channel is formed, may erect barriers and turn the waters of such stream back from the new to the old channel, without being required first to clean out such old channel, so as to restore it to the depth and condition it was in before the stream changed its course. *Pierce* v. *Kinney, supra.* The reason is the change in the course of the stream is the fault of neither owner. It is from natural causes. It is true in this case the depressions along appellant's roadbed, made in the construction of its road, in connection with the high waters of the creek, caused the stream to leave its old channel and form a new one. But this was not appellant's fault. By condemnation of or deed to its right of way it acquired the right to make the necessary excavations to build its roadbed, and if in properly con-

structing such roadbed it resulted in the creek leaving its old channel, still appellant had the right to turn it from its new back to its old channel.

It is contended by appellee that he acquired a right, by prescription, to have the creek flow in the new channel; that the excavations which, in connection with the overflow, caused the new channel, were made more than twenty years before the bringing of this suit. There is no foundation in fact for such contention, for the testimony, without conflict, shows that the creek never left its old channel until the spring of 1908.

Appellee has no cause of action. The court should have directed a verdict for the appellant.

*Reversed and remanded.*